# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COINBASE, INC. AND COINBASE GLOBAL, INC.<br>c/o Wachtell, Lipton, Rosen & Katz<br>51 W. 52nd St.<br>New York, NY 10019,<br><br>                                  Petitioners,<br><br>v.<br><br>COMMODITY FUTURES TRADING COMMISSION<br>3 Lafayette Centre<br>1155 21st Street, NW<br>Washington, DC 20581,<br><br>                                  Respondent. | Case: 1:24-mc-00124<br>Assigned To : Cooper, Christopher R.<br>Assign. Date : 10/1/2024<br>Description: Misc.<br><br>**MOTION TO COMPEL AND INCORPORATED MEMORANDUM OF LAW**<br><br>**Oral argument requested** |

## MOTION TO COMPEL
## COMPLIANCE WITH RULE 45 SUBPOENA

RECEIVED

OCT - 1 2024

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................................1

FACTUAL BACKGROUND ..........................................................................................................2

    A.    Coinbase and the underlying SEC Action ........................................................2

    B.    CFTC and SEC engagement with the digital asset industry .....................2

    C.    Coinbase's subpoena and efforts to confer with the CFTC ......................3

    D.    SDNY orders the production of parallel communications in the
SEC Action ....................................................................................................5

ARGUMENT ......................................................................................................................6

    A.    The Subpoena seeks highly relevant information going to the core claims
in the underlying litigation. ..........................................................................6

    B.    The CFTC cannot substantiate its claims of privilege or undue burden. ...........9

CONCLUSION ..................................................................................................................11

# TABLE OF AUTHORITIES

**Cases**   Page(s)

*BuzzFeed, Inc.* v. *U.S. Dep't of Just.*,
 318 F. Supp. 3d 347 (D.D.C. 2018) ............................................................................ 6, 8

*Flanagan* v. *Wyndham Int'l Inc.*,
 231 F.R.D. 98 (D.D.C. 2005) ........................................................................................ 8

*In re Denture Cream Prods. Liability Litig.*,
 292 F.R.D. 120 (D.D.C. 2013) ......................................................................... 6-7, 9, 10

*In re Non-Party Subpoena to Ctr. for Study of Soc. Pol'y*,
 659 F. Supp. 3d 54 (D.D.C. 2023) ........................................................................... 7, 10

*In re Sealed Case*,
 676 F.2d 793 (D.C. Cir. 1982) ...................................................................................... 9

*Levy* v. *U.S. Postal Serv.*,
 567 F. Supp. 2d 162 (D.D.C. 2008) .............................................................................. 9

*Marine Bank* v. *Weaver*,
 455 U.S. 551 (1982) ...................................................................................................... 7

*SEC* v. *Binance Holdings, Ltd.*,
 2024 WL 3225974 (D.D.C. June 28, 2024) .................................................................. 7

*SEC* v. *Coinbase, Inc.*,
 No. 23 Civ. 4738 (KPF) (S.D.N.Y.) ..................................................................... passim

*SEC* v. *Selden*,
 484 F. Supp. 2d 105 (D.D.C. 2007) ............................................................................ 11

*SEC* v. *W.J. Howey Co.*,
 328 U.S. 293 (1946) ........................................................................................... 1, 5, 7, 8

*Stati* v. *Republic of Kaz.*,
 2020 WL 3259244 (D.D.C. June 5, 2020) ............................................................... 9-10

*United States* v. *AT & T, Inc.*,
 2011 WL 5347178 (D.D.C. Nov. 6, 2011) .................................................................... 9

*Watts* v. *SEC*,
 482 F.3d 501 (D.C. Cir. 2007) ................................................................................ 6, 11

**Statutes and Rules**

17 C.F.R. § 144.6 .................................................................................................................. 5

17 C.F.R. § 145.8 ................................................................................................................ 10

Fed. R. Civ. P. 26 ........................................................................................................... 6, 10

Fed. R. Civ. P. 45 .................................................................................................................. 6

## PRELIMINARY STATEMENT

Coinbase moves to compel the Commodity Futures Trading Commission to produce a single category of external communications relevant to an action in the Southern District of New York — where the court recently ordered the Securities and Exchange Commission to produce the same category of relevant information as "reasonable for an incredibly high stakes, high value litigation."

Coinbase is the nation's largest and only publicly traded digital asset platform. In 2023, the SEC sued Coinbase in the SDNY, alleging that 12 of the more than 240 digital assets (or tokens) listed on its platform are "securities," purportedly rendering it an unregistered securities exchange. That contention rests on whether transactions in the 12 named tokens on Coinbase's platform are "investment contracts" under the Supreme Court's decision in *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946), and its progeny (they are not). To resolve that issue requires information about the development, functionality, uses, and promotion of those digital assets and their related blockchain networks. The SDNY court already has found such information from digital assets' issuers to be relevant — indeed, central — to the SEC's claims and Coinbase's defenses.

Coinbase is entitled to such highly relevant information in the CFTC's possession. For years, the CFTC, like the SEC, held meetings and communicated with issuers to adduce information about tokens and their related networks. That is why Coinbase sent the CFTC a Rule 45 subpoena, seeking its communications with the named token issuers. But the CFTC has stonewalled — it hasn't even conducted a single search. And its relevance, burden, and privilege challenges are baseless: this requested information goes to the heart of the *Howey* inquiry, as the judge presiding over the underlying action already has held; the CFTC has not looked for, much less substantiated a claim of undue burden to produce, such communications; and its claim of privilege is facially meritless, as *all* the requested communications are with third-party market participants.

The CFTC should be ordered to comply with the subpoena.

## FACTUAL BACKGROUND

### A. Coinbase and the underlying SEC Action

Coinbase Global, Inc., through its subsidiary Coinbase, Inc. (together, "Coinbase") operates the largest and only publicly traded digital asset exchange in the United States. Ex. 1 (SEC Compl.) ¶ 1; Ex. 2 (Coinbase Answer) ¶¶ 1, 28.[1] Since 2012, it has operated a secondary market in certain digital assets known as "tokens" or "crypto assets" or "cryptocurrencies." *Id.*

In June 2023, the Securities and Exchange Commission ("SEC") filed an enforcement action alleging that Coinbase is an unregistered national securities exchange, broker, and clearing agency. *See SEC v. Coinbase, Inc.*, No. 23-cv-4738 (S.D.N.Y. June 6, 2023) (the "SEC Action"). The SEC Action is grounded in the allegation that transactions in 12 of the more than 240 tokens listed on Coinbase's platform (the "named tokens") "are investment contracts," and thus "securities," under the Securities Exchange Act of 1934. Ex. 1 (SEC Compl.) ¶ 114. The SEC seeks injunctive relief, disgorgement with interest, and civil penalties. *Id.* at p. 99.

### B. CFTC and SEC engagement with the digital asset industry

Digital assets are part of an innovative, multitrillion-dollar industry. In the years preceding the SEC Action, both the SEC and CFTC actively solicited engagement with issuers of digital assets and other market participants to inform their understanding of the industry and its regulatory status.

The SEC, for example, created the Office of Strategic Hub for Innovation and Financial Technology (FinHub), which "facilitates the SEC's active engagement with innovators, developers, and entrepreneurs of financial technology," including issuers of "crypto assets" and participants in "crypto asset markets." Ex. 3 (FinHub Homepage). SEC staff from FinHub and other divisions met

---

[1] Citations in the form "Ex. __" refer to exhibits to the Declaration of David P.T. Webb, submitted herewith.

with, and received presentations from, digital asset exchanges and issuers — including Coinbase and entities affiliated with the named tokens. *See* Ex. 4 (2018 Memorandum from DASH); Ex. 5 (Chart of Coinbase Meetings) at App'x A. Digital asset exchanges also met with many of the SEC's commissioners, Ex. 5, App'x A at 1-2, 4-6, including the Chair, *id.* at 5.

The CFTC similarly solicited information from and engagement with the digital asset industry. In 2017, it launched an office called LabCFTC. Ex. 6 (Rel. No. 7558-17). Its goal was to "accelerate CFTC engagement with fintech[,] . . . mak[e] the CFTC more accessible to fintech innovators[,] and serv[e] as a platform to inform the CFTC's understanding of new technologies." *Id.* In furtherance of that goal, LabCFTC issued annual "Primers" on digital assets and heralded "[p]roactive engagement" between "regulators and stakeholders" to facilitate an understanding of each digital asset's "design, stated purpose, and observed use." Ex. 7 (2020 "Digital Assets Primer") at 19, 21 (noting the "novel features and characteristics" of "digital assets"); *see also* Ex. 8 (2017 "Primer on Virtual Currencies"). LabCFTC actively encouraged digital asset issuers and exchanges to engage with the CFTC: "If you are an innovator working on a technology initiative being implemented in a new activity, service, or entity that may be regulated or supervised by the CFTC, or are unsure about whether the initiative is subject to regulation by the CFTC, you may contact us at LabCFTC@cftc.gov." Ex. 9 (LabCFTC "Innovators" Page) (emphasizing that "LabCFTC provides fintech innovators the opportunity to engage with the CFTC"). And as with the SEC, digital asset issuers and exchanges met with, and provided presentations to, CFTC staff and commissioners, including CFTC Chair Benham. *See, e.g.,* Ex. 10 ("Office Hours" & Dec. 18, 2018 "Request for Input on Crypto-Asset Mechanics and Markets"); Ex. 11 (Commissioner Pham); Ex. 12 at 9 (Chair Benham Congressional Testimony) (describing 10 meetings "in the CFTC office" with one digital asset exchange over 14-month period).

### C. Coinbase's subpoena and efforts to confer with the CFTC

On June 4, 2024, Coinbase served the CFTC with a subpoena seeking documents and

communications concerning Coinbase's platform and services; the named tokens; CFTC and SEC publications and speeches on digital assets; information on pending digital asset legislation; and the agency's positions on the status of digital assets under federal law. Ex. 13.

On June 18, the CFTC objected to all 12 requests on the grounds of overbreadth, burden, and privilege. Ex. 14 (June 18 R&Os Ltr.). In a meet and confer, Coinbase emphasized its goal to avoid unduly burdening the CFTC by reaching agreement on targeted search terms and custodians, as well as a reasonable period for the CFTC to perform those searches. Webb Decl. ¶ 18. The CFTC refused even to identify relevant custodians or otherwise assess the potential volume at issue, but stated its willingness to reevaluate the subpoena if it were narrowed. *Id.*

On July 19, Coinbase served an amended subpoena (the "Subpoena"), Ex. 15, limited to two requests: (i) communications with the issuers of the named tokens, and (ii) documents concerning the scope of the CFTC's and SEC's respective regulatory authorities over digital assets, including market uncertainty on this subject.[2] *Id.* at 7. The Subpoena was limited to eight named CFTC custodians as well as other CFTC employees affiliated with LabCFTC (together, the "CFTC Custodians"). *Id.* at 3 (Instruction No. 2).

On July 29, the CFTC served objections to the two requests, again refusing any search or disclosure. Ex. 16 at 3 ("we will not be producing documents"). It asserted that the Subpoena is "overly broad, vague, and would place an undue burden on the Commission," dismissing the two

---

[2] The Subpoena's second request seeks information concerning Coinbase's affirmative defense that it lacked fair notice about the regulatory status of digital assets. In the SEC Action, the court found such information could be relevant to Coinbase's defense, but ordered the request to be held in abeyance — "at least at this stage" — so the parties could evaluate whether "other productions from the SEC suggest that there is an easily identifiable cache of relevant documents" to pursue. Ex. 19 (Order on Mot. to Compel) at 10:5-24. Accordingly, Coinbase reserves all rights with respect to its second request, but does not seek to compel compliance therewith in this motion.

requests as "a fishing expedition." *Id.* at 2. It claimed that the documents are privileged. *Id.* at 2-3. And it claimed that timely compliance is not possible. *Id.* at 3.

By meet and confer, Coinbase explained that the CFTC's communications with the issuers of the named tokens are highly relevant to the SEC Action because they are likely to contain facts that bear on whether the assets were offered or sold as investment contracts — *e.g.*, information about uses of the token as well as the blockchain network's contemporaneous decentralization and functionality, *see SEC v. W.J. Howey Co.*, 328 U.S. 293, 298-99 (1946). Webb Decl. ¶ 23. The CFTC responded that such communications are privileged, but could not articulate what privilege would apply to such communications with third parties. *Id.* ¶ 24. The CFTC likewise could not substantiate its claim of undue burden; it acknowledged that it had not even tried to identify the volume of responsive material, much less to assess the burden of its review and production. *Id.* And when, in accordance with 17 C.F.R. § 144.6, Coinbase offered to pay the CFTC's costs in searching for, reviewing, and producing the communications, counsel asserted that no such mechanism existed to "accept Coinbase's money." Webb Decl. ¶ 24. Asked how long is needed for production, the CFTC responded that the "timing doesn't matter," and Coinbase is "free to submit a motion to compel." *Id.*

### D. SDNY orders the production of parallel communications in the SEC Action

In July 2024, Coinbase moved to compel the SEC to produce, among other requests, the same types of communications at issue in this motion: third-party communications with the issuers of the named tokens. *See* Ex. 17 (Mot.); Ex. 18 (Mem. in Supp. of Mot.).

There, as here, the SEC invoked relevance, burden, and privilege as bases for noncompliance. Ex. 18 (Mem. in Supp. of Mot.) at 5-9, 11. And there, as here, Coinbase made clear that "[c]ommunications with token issuers and other third parties would not be privileged," *id.* at 12, and that the "factual information and analysis contained in [such communications] go to the heart of the SEC's allegations in th[e] litigation," *id.* at 7. Judge Failla granted Coinbase's motion to compel

disclosure of this information, specifically finding relevant the SEC's communications with the issuers of the named tokens. Ex. 19 (Order) at 3:25-4:2, 7:25-8:2. Any resulting burden, Judge Failla found, was "reasonable for [this] incredibly high stakes, high value litigation." *Id.* at 7:3-4.

* * *

Coinbase now moves the Court to compel the CFTC to comply with the Subpoena and produce documents responsive to a substantively identical request for communications between the CFTC Custodians and third-party entities and individuals affiliated with the named tokens.

## ARGUMENT

"Federal Rule of Civil Procedure 45 authorizes court-issued subpoenas to obtain discovery from third parties and Rule 26, which generally governs civil discovery, provides [that] [p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." *Watts v. SEC*, 482 F.3d 501, 507 (D.C. Cir. 2007). Rule 45 requires that the district court enforce subpoenas over agencies' objections so long as the subpoena does not call for privileged matter or cause an undue burden. *Id.* at 508. The "burden lies on the party resisting discovery to show that the documents required are either unduly burdensome or privileged." *BuzzFeed, Inc. v. U.S. Dep't of Just.*, 318 F. Supp. 3d 347, 356 (D.D.C. 2018).

Coinbase's Subpoena seeks nonprivileged communications containing information already held to be relevant in the SEC Action. The CFTC has no valid objection to their disclosure.

### A. The Subpoena seeks highly relevant information going to the core claims in the underlying litigation.

The information sought by the Subpoena is clearly relevant within the meaning of the Federal Rules. "For purposes of discovery, relevance is liberally construed[,]" and "with respect to a Rule 45 subpoena, a request for discovery should be considered relevant if there is *any possibility* that the information sought may be relevant to the claim or defense of any party." *In re*

*Denture Cream Prods. Liability Litig.*, 292 F.R.D. 120, 123 (D.D.C. 2013) (emphasis added); *see also In re Non-Party Subpoena to Ctr. for Study of Soc. Pol'y*, 659 F. Supp. 3d 54, 58 (D.D.C. 2023) ("The Federal Rules of Civil Procedure [] contemplate a broad scope of discovery.").

The communications sought are highly relevant to Coinbase's defenses to the SEC's claims. The SEC alleges that the named tokens were offered and issued as investment contracts. This requires the SEC to establish that the transactions in those tokens involve (i) an investment of money, (ii) in a common enterprise, (iii) with an expectation of profits to come solely from the efforts of others. *Howey*, 328 U.S. at 301. The Supreme Court has made clear that *Howey*'s three-prong test is fact-intensive: "Each transaction must be analyzed and evaluated on the basis of the content of the instruments in question, the purposes intended to be served, and the factual setting as a whole." *Marine Bank* v. *Weaver*, 455 U.S. 551, 560 n.11 (1982).

With respect to the application of *Howey* to digital assets, the SEC has identified over 65 aspects of the "factual setting" of how digital assets are developed, used, and promoted that it contends should be evaluated. *See* SEC, Strategic Hub for Innovation & Fin. Tech., *Framework for "Investment Contract" Analysis of Digital Assets* (2019) (Ex. 20) ("Whether a particular digital asset at the time of its offer and sale satisfies the *Howey* test depends on the specific facts and circumstances." (*quoted in SEC* v. *Binance Holdings Ltd.*, 2024 WL 3225974, at *20 (D.D.C. June 28, 2024) (under *Howey*, it is "the economic reality of the particular transaction, based on the entire set of contracts, expectations, and understandings of the parties, that controls"))). That information includes whether and to what extent the underlying blockchain network is developed and operational; the functionality of that network and what stakeholders are able to develop or enhance such functionality; the characteristics and uses of the token; and the level of decentralization of the token's network. *See id.* Factual information bearing on these issues as to the named tokens and

-7-

their related blockchain networks is thus highly relevant to the claims in the SEC Action and whether or not transactions in those tokens are investment contracts under *Howey*.

Through LabCFTC, as well its commissioners and other staff, the CFTC (like the SEC) actively solicited precisely this information for years from issuers, projects, and other stakeholders in the digital asset industry. *See, e.g.*, Exs. 6 & 9 (LabCFTC Pages); Ex. 10 ("Office Hours"). Information that the CFTC obtained on these issues from those parties is critical to Coinbase's ability to defend itself against the allegations in the SEC Action. Indeed, it is precisely the same type of information that the SEC received — during this same period, through the same type of engagement with the digital asset industry that the CFTC solicited and encouraged. *See, e.g.*, Ex. 4 (2018 DASH Memo); Ex. 5 (Chart of Coinbase Meetings) at App'x A; Ex. 21 (FinHub Mtg. Req. Form).

Judge Failla, who has presided over the SEC Action for over a year, found this very category of communications to be relevant and subject to discovery. Judge Failla ordered the SEC to produce its communications with issuers about the named tokens — "including, but not limited to memoranda, PowerPoint decks and materials received from third parties," Ex. 19 at 8:1-2 — given their relevance to the application of *Howey*, *see id.* at 6:18-21.

Judge Failla's analysis applies equally to the CFTC communications at issue in this motion. This Court has repeatedly confirmed in the context of Rule 45 subpoenas that, because it "generally has limited exposure to and understanding of the primary action," it is "cautious in determining relevance of evidence, and in case of doubt should err on the side of permissive discovery." *Flanagan v. Wyndham Int'l Inc.*, 231 F.R.D. 98, 103 (D.D.C. 2005). And where relevance has been determined by a presiding court "in a better position to evaluate the question . . . because of its familiarity with the underlying" action, "this Court gives deference." *Id.* The CFTC refuses to offer a single valid basis to deviate from this well-established practice: the "Government Respondent['s] argument to

the contrary therefore is easily dismissed." *BuzzFeed*, 318 F. Supp. at 358; *see also id.* at 357 ("what started arguably as a difficult question is no more: The District Court in Florida has ruled").

### B. The CFTC cannot substantiate its claims of privilege or undue burden.

The CFTC also contends that the subpoenaed third-party communications would be privileged, and that a search for such communications would constitute an undue burden. Both arguments fail. "The burden lies on the party resisting discovery to show that the documents requested are [] unduly burdensome or privileged." *In re Denture Cream*, 292 F.R.D. at 123.

The CFTC's invocation of privilege is easily rejected. The communications at issue are between the CFTC and non-governmental third parties; no conceivable privilege could apply to them. *See, e.g., In re Sealed Case*, 676 F.2d 793, 808-09 (D.C. Cir. 1982) ("attorney-client privilege covers only confidential communications between attorney and client"); *Levy v. U.S. Postal Serv.*, 567 F. Supp. 2d 162, 166-67 (D.D.C. 2008) ("The documents consist of correspondence with an outside party and 'external memoranda' that have either been disclosed to individuals outside the agency or were created by third parties and provided to the agency, and therefore do not fall within the ambit of the deliberative process privilege.").

The CFTC's burden objection fares no better. For starters, the CFTC has offered nothing to substantiate it. *United States v. AT & T, Inc.*, 2011 WL 5347178, at *5 (D.D.C. Nov. 6, 2011) (party asserting undue burden faces "heavy burden" of supporting claim with "convincing facts"). The CFTC conceded that it does not know whether the requested communications exist, much less the volume of such communications or the burden of collecting and reviewing them. Webb Decl. ¶¶ 18, 24. Indeed, when Coinbase proposed that the CFTC run a hit report — to assess the burden and allow Coinbase to attempt to address it, if necessary — the CFTC flatly refused, *id.* ¶ 24. *See, e.g., Stati v. Republic of Kaz.*, 2020 WL 3259244, at *9 (D.D.C. June 5, 2020) (granting motion to

compel and finding, "[m]ost crucially, [respondent] has not represented that it actually conducted a preliminary search to determine the nature and scope of its records").

At bottom, any burden imposed by the Subpoena is small and eminently reasonable in comparison to the "incredibly high stakes, high value litigation" at issue. Ex. 19 at 7:3-4. Because none of the communications sought could be privileged and require a privilege log, the burden is limited to the running of a search across a discrete set of custodians' email inboxes, then producing the results — something the CFTC does on a daily basis, in litigation and for FOIA purposes. This Court routinely finds that much broader requests fall short of imposing an undue burden. *See, e.g., In re Non-Party Subpoena*, 659 F. Supp. 3d at 61-62 (finding subpoena for communications between agency contractor and *any* third party concerning underlying litigation sought "narrow category of documents").

And many of the entities affiliated with the tokens are not based in the United States. Still others either no longer exist or have changed drastically over the intervening decade. The discovery is not unreasonably duplicative, and there is no single other source that is more convenient, less burdensome, or less expensive than the CFTC's files. *See* Fed. R. Civ. P. 26(b)(2)(C)(i). In all events, Coinbase — to alleviate any burden, and in accordance with the CFTC's *Touhy* regulations, *see* 17 C.F.R. § 144.6 (incorporating *id.* § 145.8 & App'x B) — offered to reimburse the CFTC for the cost of searching for, reviewing, and producing the communications at issue. The CFTC refused.

Neither of the CFTC's remaining burden arguments is sustainable. The CFTC asserts that the requested communications may not be admissible to a jury. Ex. 16 at 3. Regardless of whether that is true (the communications likely would be admissible), this Court has made clear that the issuer of a Rule 45 subpoena "need not demonstrate, and this Court need not determine, whether the discovery sought will be admissible at trial," *In re Denture Cream*, 292 F.R.D. at 124 — that determination will be made in the SEC Action. The CFTC also asserts that it cannot timely comply.

But Coinbase asked the CFTC to name the time frame needed for compliance. Webb Decl. ¶ 24. The CFTC refused even to provide an estimate, instead responding that "timing doesn't matter." *Id.*

Coinbase is mindful that courts must balance a "litigant's right to evidence and the government's interest in not being used as a speakers' bureau for private litigants." *Watts*, 482 F.3d at 509. But the balance here is clear: "This case does not involve a private litigant intent on burdening the federal government through its own choosing. Instead, [Coinbase] seeks information to mount a defense from a government-initiated action." *SEC v. Selden*, 484 F. Supp. 2d 105, 109 (D.D.C. 2007). The Court should reject the CFTC's unsubstantiated claim of burden.

## CONCLUSION

For these reasons, Coinbase respectfully asks the Court to grant its motion to compel communications between the CFTC Custodians and third parties affiliated with the named tokens.

Dated: October 1, 2024

Respectfully submitted,

*/s/ Kevin S. Schwartz*

Kevin S. Schwartz (D.D.C. Bar ID: NY291)
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York 10019
(212) 403-1000

William Savitt (*pro hac forthcoming*)
Sarah K. Eddy (*pro hac forthcoming*)
Adam M. Gogolak (*pro hac forthcoming*)
David P.T. Webb (*pro hac forthcoming*)
Emily R. Barreca (*pro hac forthcoming*)
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York 10019
(212) 403-1000

Steven R. Peikin (Bar ID: 439588)
Kathleen S. McArthur (Bar ID: 984318)
Julia A. Malkina (*pro hac forthcoming*)
Olivia G. Chalos (*pro hac forthcoming*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004-2498
(212) 558-4000

*Attorneys for Petitioners*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

COINBASE, INC. AND COINBASE GLOBAL, INC.
c/o Wachtell, Lipton, Rosen & Katz
51 W. 52nd St.
New York, NY 10019,

                Petitioners,

v.

COMMODITY FUTURES TRADING COMMISSION
3 Lafayette Centre
1155 21st Street, NW
Washington, DC 20581,

                Respondent.

Misc. No.

## [PROPOSED] ORDER

Upon consideration of Petitioners' Motion to Compel and Incorporated Memorandum of Law, it is hereby

**ORDERED** that said Motion to Compel is Granted, and it is hereby

**ORDERED** that Respondent Commodity Futures Trading Commission comply with Request No. 1 of the Subpoena, as described in the Motion to Compel, by Friday, November 15, 2024.

**SO ORDERED** this _____ day of _____, 2024.

_____
United States District Judge